**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUSTIN MANITTA,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE OF NEW JERSEY, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 13-420 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

    Plaintiff, Justin Manitta ("Plaintiff"), commenced this action against Defendants, State of New Jersey; County of Hunterdon; Borough of Flemington; Flemington Borough Police Department; Flemington Borough Chief of Police George A. Becker; Detective Mariaschin; Officer Jerry Rotella, Jr.; and Officer Jonathan A. Sellner, individually and in their official capacities, alleging: (1) under 42 U.S.C. § 1983 ("Section 1983") that the Defendants violated his Fourth and Fourteenth Amendment rights; and (2) violations of state law. (See dkt. entry no. 1, Compl. at ¶¶ 32–33.) The Borough of Flemington, Flemington Borough Police Department, Flemington Borough Chief of Police George A. Becker, Det. Mariaschin, Ptl. Officer Jerry Rotella, Jr., and Ptl. Officer Jonathan A. Sellner ("Flemington Defendants") now move for summary judgment in their favor pursuant to Federal Rule of Civil Procedure ("Rule") 56. (See dkt. entry no. 27, Flemington Defs. Notice of Mot.; dkt. entry no. 27-1, Flemington Defs. Br.; dkt. entry no. 27-2, Flemington Defs. Certification.) Plaintiff opposes the motion. (See dkt. entry no. 31, Pl.'s Br. in Opp'n.) The Court determines the motion on the papers and without an oral hearing pursuant to Local Civil Rule

78.1(b).  The Court, for the reasons stated herein, will (1) grant the motion as to the Section 1983 claims, (2) deny the motion without prejudice as to the state law claims, (3) enter judgment for the Flemington Defendants as to the Section 1983 claims, and (4) dismiss the complaint without prejudice insofar as it asserts state law claims, and with leave to reinstate them in state court.

## I. BACKGROUND

On January 14, 2011, Plaintiff drove a friend, Abby Ozimek, home to her apartment in the Hunter Hills Apartment Complex ("Hunter Hills") in Flemington, New Jersey in his vehicle.  (See Compl. at 4.)  Unbeknownst to Plaintiff, that same day, the Hunterdon County Narcotics Task Force was conducting an investigation and a surveillance operation at Hunter Hills. When Plaintiff pulled up to Ozimek's apartment, he "parked, went upstairs, had a cup of coffee, chatted for a little bit and then left to go and eat."  (See Pl.'s Br. in Opp'n at 8, ¶ 4.)

The narcotics officers observed these events.  (See Compl. at 4.)  One of the officers, Detective Mariaschin of the Flemington Borough Police Department, recognized Ozimek as a "known drug user" and radioed to Officers Rotella and Sellner "advising them to 'stop' [Plaintiff's] vehicle and identify the occupants."  (See id.)  Officer Sellner then initiated a vehicle stop, where he requested Plaintiff's license and registration and asked Plaintiff to step out of his vehicle.  (See Pl.'s Br. in Opp'n at 9, ¶¶ 8–9.)  Officer Sellner ordered Plaintiff "to put his hands on the back of the vehicle" and then conducted a pat down of Plaintiff's person and found nothing.  (See id. at 9, ¶ 11.) The officer cited Plaintiff for unapproved equipment, improper insurance identification, and obstructed view.  (See id. at 5.)  Plaintiff's car had to be impounded due to the lack of insurance identification, so Officer Sellner offered to take Plaintiff home, but Plaintiff refused the ride.  (Id.)

2

The entire stop, based on video time stamps, lasted approximately 30 minutes at the most. (See dkt. entry 31-1, Certification of Flood, Ex. F.)

Plaintiff then pleaded guilty in West Amwell Township Municipal Court to the obstructed view charge and stipulated, through his lawyer, that there was probable cause for his stop on June 13, 2012. (See dkt. entry no. 21-3, Certification of Peslak, Ex. F.) The other charges were dropped. (See id.) Plaintiff now brings this action against various municipal defendants relating to the aforementioned "removal," "pat down and search," and "detainment." (See generally Compl.)

## II. PROCEDURAL HISTORY

Plaintiff filed the complaint in this Court on January 11, 2013. (See Compl.) The State of New Jersey moved to dismiss all claims asserted against it by Plaintiff. (See dkt. entry no. 14, Mot. to Dismiss.) The Court granted that motion and dismissed the complaint insofar as it was asserted against the State of New Jersey. (See dkt. entry no. 17, Order.) On April 24, 2014, the County of Hunterdon filed a motion for summary judgment. (See dkt. entry no. 21, Cty. Mot. for Summ. J.) The Flemington Defendants separately filed a motion for summary judgment on June 6, 2014. (See dkt. entry no. 25, Flemington Defs. Notice of Mot.; dkt. entry no. 26, Flemington Defs. Br.; dkt. entry no. 26-1, Flemington Defs. Certification.) A duplicate copy of this motion was filed on June 14, 2014. (See dkt. entry no. 27, Flemington Defs. Notice of Mot.; dkt. entry no. 27-1, Flemington Defs. Br.; dkt. entry no. 27-2, Flemington Defs. Certification.) The Court then terminated Docket Entry No. 25 as duplicative and allowed Docket Entry No. 27 to remain pending. (See dkt. entry no. 37, 10-27-14 Mem. Op. at 2.)

Plaintiff responded to the County of Hunterdon's motion as well as the Flemington Defendants' motion on August 5, 2014. (See Pl.'s Br. in Opp'n.) While Plaintiff opposed the Flemington Defendants' motion, Plaintiff stated that he would "not be responding" to the County of Hunterdon's motion as he agreed that "a prima facie case cannot be made against the County of Hunterdon, therefore we agree to dismiss them as a defendant." (See id. at 1–2.) The Court thus dismissed the claims asserted against the County of Hunterdon on October 27, 2014. (See dkt. entry no. 38, 10-27-14 Order.) The Court now addresses the Flemington Defendants' motion for summary judgment filed on June 14, 2014. (See Flemington Defs. Notice of Mot.; Flemington Defs. Br.)

### III.  SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56, which provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 331 (1986). In response, "the nonmoving party [must] go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) and Celotex Corp., 477 U.S. at 322-23). Summary judgment is "proper if, viewing the record in the light most

favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." United States ex rel. Kosenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## IV. LEGAL PRINCIPLES AND DISCUSSION

Plaintiff's claims invoke liability under Section 1983, stemming from the stop of his vehicle on January 14, 2011. (See generally Compl.) As a result of that stop, the officers issued three citations to Plaintiff: (1) uninsured vehicle, (2) unapproved equipment, and (3) obstructed view. (See Pl.'s Br. in Opp'n at 5.) Plaintiff pleaded guilty to the charge of obstructed view on June 13, 2012 and stipulated that probable cause existed for the stop. (See Certification of Peslak, Ex. F.) He then brought this action alleging that federal constitutional and state law violations occurred based on the officers' conduct during the stop. The Court will address each in turn.

### A. Section 1983 Claims

"[T]he plaintiff must demonstrate that a person acting under the color of law deprived him of a federal right" in order to state a prima facie case under Section 1983. Berg v. Cnty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000). Section 1983 on its own does not provide a source of substantive rights nor does it provide redress for common law torts. See id.; Canales v. Twp. of Toms River, No. 11-3159, 2014 WL 683991, at *18 (D.N.J. Feb. 20, 2014). Instead, "it is the vehicle through

5

which plaintiffs can seek redress against government officials for violations of federal statutory and constitutional rights." See Canales, 2014 WL 683991, at *18.

The Flemington Defendants do not dispute that they were acting under the color of state law at the time of Plaintiff's stop on January 14, 2011. The issue is whether Plaintiff's constitutional rights were violated by the conduct of the officers during the stop and whether the Flemington Defendants can be held liable for those violations.

### 1. Plaintiff's Guilty Plea and Probable Cause Stipulation

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . ." Tollett v. Henderson, 411 U.S. 258, 267 (1973). If a prior criminal defendant seeks to bring such constitutional claims after a guilty plea, he is considered to be collaterally estopped from bringing such claims. See Hooper v. Guthrie, 390 F.Supp. 1327, 1333 (W.D. Pa. 1975).

Plaintiff pleaded guilty to one of the charges levied as a result of his vehicle stop: obstructed view. The Court recognizes that Plaintiff pleaded guilty to a motor vehicle violation issued on a summons—not a criminal charge issued via an indictment. Had Plaintiff merely pleaded guilty to the obstructed view charge without more, this would be unlikely on its own to trigger collateral estoppel in this case. Plaintiff, however, stipulated to probable cause for the stop during his plea hearing.[1]

---

[1] The judge asked Plaintiff's attorney if there was a stipulation to probable cause, and the attorney replied, "Probable cause for the stop, yes, Judge." (See Certification of Peslak, Ex. F at 3.)

### 2. Probable Cause and Investigatory Stops

The existence of probable cause allows officers to conduct an investigatory stop without running afoul of the Constitution. See Terry v. Ohio, 392 U.S. 1 (1968). "[B]rief, investigatory stops [may be conducted] when the officer has a reasonable, articulable suspicion that criminal activity is afoot." United States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002) (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). "This rule applies whether the criminal activity is ongoing or has already been completed." United States v. Fogle, 515 F.Supp.2d 474, 482 (D.N.J. 2007). Once officers have probable cause to stop the individual, they are then entitled to frisk or pat down an individual who they believe may be armed and dangerous. See Terry, 392 U.S. at 8.

Reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Wardlow, 528 U.S. at 123. It "can be established with information that is different in quantity or content than that required to establish probable cause" and "can arise from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330 (1990). Courts must consider the "totality of the circumstances" in determining the existence of reasonable suspicion. Robertson, 305 F.3d at 167. The analysis for reasonable suspicion is objective, and the subjective intent of the officer is not relevant. See United States v. Goodrich, 450 F.3d 552, 559 (3d Cir. 2006).

Notwithstanding that the reasonable suspicion standard is less demanding than the standard for probable cause, reasonable suspicion "unequivocally demands that 'the detaining officers must have a particularized and objective basis for suspecting the particular

7

person stopped of criminal activity.'" United States v. Brown, 448 F.3d 239, 247 (3d Cir. 2006) (emphasis added) (quoting United States v. Cortez, 449 U.S. 411, 417–18 (1981)). "[T]he 'reasonable suspicion' inquiry is highly fact-dependent in nature." Goodrich, 450 F.3d at 553.

> Reasonable suspicion can arise from a combination of one or more factors, including:
>
> specialized knowledge and investigative inferences . . . , personal observation of suspicious behavior . . . , information from sources that have proven to be reliable, and information from sources that—while unknown to the police—prove by the accuracy and intimacy of the information provided to be reliable at least as to the details contained within that tip . . . .

United States v. Nelson, 284 F.3d 472, 478 (3d Cir. 2002) (internal citations omitted). While reasonable suspicion may arise from information obtained from other sources, officers must have "some 'reason to believe not only that the [tipster] was honest but also that he was well informed.'" Brown, 448 F.3d at 250 (quoting Alabama, 496 U.S. at 332).

Courts use a flexible standard assessing the reliability and value of a tip in light of the totality of the circumstances. See United States v. Valentine, 232 F.3d 350, 354–57 (3d Cir. 2000) (finding reasonable suspicion based on face-to-face tip in conjunction with surrounding circumstances). Circumstances that may contribute to a finding of reasonable suspicion or can serve to "corroborate an otherwise insufficient tip" include: the individual's presence in a high crime area; the individual's presence on the street in late hours; nervous or evasive behavior; and walking away or fleeing from police. Brown, 448 F.3d at 251; see also United States v. Navedo, 694 F.3d 463, 470–72 (3d Cir. 2012); Valentine, 232 F.3d at 356–57. Moreover, when a tip is one of the primary reasons for the stop, that tip "must provide a particularized and

8

objective basis for suspecting (1) the particular persons stopped (2) of criminal activity." Goodrich, 450 F.3d at 560.

Courts are mindful that the determination of whether reasonable suspicion exists is often made by officers on the fly under exigent circumstances. Robertson, 305 F.3d at 168. As a result, courts are "reluctant to 'second-guess' investigative decisions made by officers in hot pursuit of criminal suspects." Id. at 167.

Plaintiff, however, attempts to parse out his claim, arguing that his "cause of action has absolutely nothing to do with the stop of plaintiff's vehicle." (See Pl.'s Br. in Opp'n at 1.) Instead, Plaintiff argues that his cause of action originates from "the unreasonable removal of plaintiff from his vehicle, the unreasonable pat-down and search of plaintiff's person, and the unreasonable detainment and seizure of plaintiff in violation of is [sic] Fourth Amendment rights" by the Flemington Defendants. (See id.) The Court however, cannot support such a fanciful argument that attempts impermissible compartmentalization.

Plaintiff cannot parse out his argument from the stop itself. Plaintiff stipulated to probable cause, and thus the officers had the right to conduct an investigatory traffic stop. The officers, however, had probable cause to stop Plaintiff's vehicle even without Plaintiff's stipulation. Plaintiff's passenger, Abby Ozimek, was a convicted drug user. (See dkt. entry no. 27-1, Certification of McCarthy, Ex. B.) Detective Mariaschin knew this fact and he witnessed Plaintiff enter and remain in Ozimek's apartment for a period of time during a narcotics surveillance investigation in a high crime area. Further, the officers suspected that Plaintiff's windows were illegally tinted—a motor vehicle violation that Plaintiff pleaded guilty to on June 13, 2012. (See Certification of Peslak, Ex. F

at 1.)  All of these facts together lead this Court to conclude that probable cause existed for an investigatory stop of Plaintiff's vehicle after leaving Ozimek's apartment.

Plaintiff had just been spotted by narcotics officers with a known drug user in a high crime area.  Officers could reasonably believe this individual could be dangerous and thus were entitled to conduct a Terry frisk of Plaintiff's person.  See Terry, 392 U.S. at 8.  When Plaintiff stepped out of his car, the officers only patted Plaintiff down.  At no point did the officers search Plaintiff's vehicle or the pockets of Plaintiff's clothing or further investigate his person, and the stop lasted approximately 30 minutes.  Plaintiff was never placed into a squad car or handcuffed.  Thus, the officers properly conducted an investigatory stop and did not exceed the bounds of constitutionally permitted stop and search law.  As detailed above, the officers did engage in such a stop and adhered to the standards of legal permissibility in their conduct by merely asking Plaintiff to step out of his vehicle and conducting a pat down of his person.

Plaintiff's guilty plea coupled with a stipulation of probable cause for the stop prevents Plaintiff's claims alleging constitutional violations against the Flemington Defendants in their handling of the traffic stop.  As discussed, even if Plaintiff had not stipulated to probable cause, the officers had probable cause to stop Plaintiff based on his association with a drug user in a high crime area during a narcotics surveillance investigation.  Once probable cause was established, the officers were entitled to a brief, investigatory stop where an individual may be removed from his vehicle and patted down to check for weapons.  See Terry, 392 U.S. at 25–26.  This exactly mirrors the facts of this case and as such the Flemington Defendants' motion for summary judgment insofar as it

concerns the Section 1983 claims – other than the claim concerning excessive force, discussed infra – will be granted.

### 3. Excessive Force Claim

The complaint alleges that the officers violated Plaintiff's constitutional rights by using excessive force during the traffic stop. (See Compl. at 8.) "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004) (quotation omitted). "The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, 'the officers' actions are objectionably reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" Id. (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). "Thus, if a use of force is objectively reasonable, an officer's good faith is irrelevant and any bad faith motivation on his part is immaterial." Kopec, 361 F.3d at 776.

Graham states that:

> [t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation.

490 U.S. at 396–97. Reasonableness, then, is typically reserved for the jury to decide; however, "'defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'" Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999) (quoting Scott v.

Henrich, 39 F.3d 912, 915 (9th Cir. 1994)).  Further, "courts are cautioned to judge reasonableness from the perspective of the officer on the scene, who may be required to make split-second judgments."  Canales, 2014 WL 683991, at *29.

Plaintiff testified during his deposition, when asked what happened during the traffic stop, that an officer "said get out of the car and go to the back of [my] car and I did."  (See Certification of McCarthy, Ex. A, at T22:5–6.)  Plaintiff continued: "He told me not to move and stay there and started patting me down . . . . [T]hen after he told me to stay at the back of the car . . . ."  (Id. at T22:18–19, 25.)  The officer had no further physical contact with Plaintiff.  (See Certification of McCarthy, Ex. A.)

Plaintiff claims that the officer left him standing outside his vehicle for about 15 minutes before stating that he could return; however, Plaintiff makes no allegations as to the officer using rough physical contact.  (See id. at T24:5–7.)  Plaintiff does not allege that the officer ripped him from his car, slammed him up against his vehicle prior to patting him down, verbally threatened him, or even handcuffed him.  Rather, the officer conducted a "carefully limited search of the outer clothing [of Plaintiff] . . . in an attempt to discover weapons that might be used to assault him."  Terry, 392 U.S. at 30.  The officer was "entitled [to do such a search] for the protection of himself and others in the area."  Id.  Thus, even viewing the facts in the light most favorable to Plaintiff, the Court finds that the officer did not use excessive force during Plaintiff's traffic stop and pat down.  See Bonner v. New Jersey, No. 10-2684, 2012 WL 254138, at *3 (D.N.J. Jan. 27, 2012) (granting summary judgment to defendant state troopers, as "physical contact with Plaintiff was limited to a pat down search" and "no evidence to suggest that improper force was applied").  The Flemington

Defendants' motion for summary judgment, insofar as it concerns claims for excessive force under Section 1983, will be granted. [2]

### B.     State Law Claims

Plaintiff also alleges state law claims under the New Jersey Civil Rights Act and for assault and battery, false arrest, false imprisonment, excessive force, failure to train or supervise, failure to act or discipline, invasion of privacy, false light, intentional infliction of emotional distress, and negligent infliction of emotional distress.  (See Compl. at 7–10.)  In view of the Court's resolution of all of the federal claims, the Court may dismiss these remaining state law claims without prejudice to reinstate in state court.  See 28 U.S.C. § 1367(c)(3), (d) (authorizing courts to decline exercise of supplemental jurisdiction over state law claims if original jurisdiction claim is resolved, and tolling the statute of limitations period for state law claims to be brought in state court).  Thus, the Court will dismiss the state law claims without prejudice, and with leave to Plaintiff to reinstate them in state court.

---

[2] Had the Court found that the officers' actions were objectively unreasonable, the officers would not be entitled to qualified immunity.  See Christian v. Orr, 512 Fed.Appx. 242, 246 (3d Cir. 2013); Canales, 2014 WL 683991, at *29.  The Court does find, however, that the officers' actions were objectively reasonable, and thus, the officers would be entitled to qualified immunity.  See generally Canales, 2014 WL 683991, at *16–17 (detailing qualified immunity and its applicability).

## V. CONCLUSION

The Court, for the reasons stated supra, will grant the Flemington Defendants' motion for summary judgment as to the Section 1983 claims, and dismiss the Complaint without prejudice as to the state law claims. The Court will issue an appropriate Order and Judgment.

  s/ Mary L. Cooper  
**MARY L. COOPER**  
United States District Judge

Dated: December 5, 2014